UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
ROCKFORD DIVISION

| | |
|---|---|
| TARYN FERNANDES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No.: 3:19-cv-50337 |
| ) | |
| ROSALIND FRANKLIN UNIVERSITY ) | |
| SCHOOL OF MEDICINE AND ) | |
| SCIENCE d/b/a ) | |
| ROSALIND FRANKLIN UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, Taryn Fernandes (hereinafter "Plaintiff" or "Fernandes"), and files her complaint against Defendant, Rosalind Franklin University School of Medicine and Science d/b/a Rosalind Franklin University (hereinafter "Defendant" or "RFU") and in support she states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* (hereinafter "IHRA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination and retaliation against Plaintiff because of her sex and sexual harassment, public disclosure of private facts, and intrusion upon seclusion leading to her termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a), as this action involves state law claims arising from the same case and controversy as Plaintiff's federal claims.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

5. Plaintiff, Fernandez, is a citizen of the United States, and is, and was at all times material, a resident of the state of Illinois, residing in McHenry County, Illinois.

6. Defendant, RFU, is an Illinois Not-For-Profit Corporation with its principal place of business in North Chicago, Illinois.

7. Defendant is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On January 30, 2019, Plaintiff dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) based on sex, sexual harassment, and retaliation.

10. Plaintiff's EEOC charge was filed within three hundred days after the alleged unlawful employment practices occurred.

11. On September 17, 2019 the EEOC issued to Plaintiff a Notice of Right to Sue, upon Plaintiff's request.

12. This complaint was filed within ninety days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

13. Plaintiff is a female.

14. Plaintiff has spent approximately fifteen years of her life dedicated to her schooling in order to better herself and become a successful and impactful physician.

15. At all times material, Plaintiff was a medical student and worked for Defendant as part of her first-year medical residency program and was placed at Centegra Hospital.

16. As a first-year medical student Plaintiff's job responsibilities included patient care and rotations through various departments to expand her medical skills.

17. Because of her sex, Plaintiff was subjected to severe and pervasive sexual harassment.

18. Plaintiff was enjoying her residency until out of the blue she received a text message from Dr. Preston Cannady, Residency Program Director, stating "I need to meet with you today at 4:30."

19. Plaintiff's shift had ended for the day and as such she had already left hospital property. However, she promptly returned at Dr. Cannady's request to discuss the evasive text message she received.

20. Plaintiff arrived back at the hospital and met with Dr. Cannady and Dr. Maryna Shayuk, Assistant Professor of Medicine. A copy of Defendant's handbook was on the desk placed directly in front of Dr. Cannady.

21. The first questions and statements Defendant made to Plaintiff were "Taryn [Plaintiff] what were you doing last night?" Followed soon after by "Well what time did you leave the hospital?" and then "It has been said that you were seen late last night on one of the computers here at Centegra. There were also people who saw you on the computer according to the nurses. Attending's also testified that they saw you here. You are telling me you weren't here late last night is that correct?"

22. Plaintiff looked in disbelief and answered "Yes, that's exactly what I [Plaintiff] am telling you."

23. Defendant continued its interrogation and stated to Plaintiff "People saw you sexting from one of the computers on the 7th floor." Defendant then in no uncertain terms accused Plaintiff of "sending naked photos as well as videos which involved toys in places I [Dr. Cannady] don't wish to even think of."

24. Plaintiff was in shock and vehemently denied the inflammatory allegations.

25. Horrified and equally humiliated Plaintiff requested Defendant conduct a full investigation into the allegations as she had not done what Defendant was accusing her of.

26. Defendant's investigation uncovered that due to her sex, multiple nurses and various hospital staff members illegally and without Plaintiff's consent gained access to Plaintiff's personal Gmail account from one of Centegra's tap-and-go computer terminals in Pod 740.

27. This was a pointed attack as the multiple nurses and various hospital staff not only accessed Plaintiff's personal Gmail account, they searched for and found Plaintiff's Google Photos

which contained private, explicit, personal, and intimate photographs and videos Plaintiff had taken – during her own personal time which were intended for private use only.

28. It was further uncovered during Defendant's investigation that the multiple nurses and various hospital staff members disclosed and paraded Plaintiff's private, explicit, personal, and intimate photographs and videos to many other employees.

29. Plaintiff asked Defendant to disclose who the offenders were, but Defendant refused to provide Plaintiff information regarding the multiple nurses and various hospital staff involved in violating Plaintiff's right to privacy, intruding upon her seclusion, and the discrimination against her.

30. No similarly situated male employees were treated in this manner.

31. Approximately one to two weeks after Defendant's investigation began, Plaintiff received a phone call from Dr. Shayuk who notified Plaintiff that she was "in the clear" meaning Plaintiff was cleared of wrongdoing – Plaintiff had no doubt she would be cleared as she did not engage in any inappropriate behavior.

32. Eager to continue on her path to becoming a physician, Plaintiff felt it best to transfer away from her unidentified and numerous harassers to get a "fresh start" free from disapproving looks and further harassment and humiliation.

33. Defendant denied Plaintiff's requests and she was forced to continue working with and among the very people who had exploited her, invaded her privacy, and discriminated against her.

34. Defendant did nothing to protect Plaintiff from further discrimination, harassment, humiliation, or embarrassment.

35. In retaliation – and to the detriment of the patients Defendant serves – the multiple nurses and various hospital staff refused to follow Plaintiff's orders. A non-exhaustive list includes Plaintiff asked a nurse to repeat a blood pressure reading and administer fluids - the nurse refused. Plaintiff ordered stool collection and again the nurse refused.

36. To further retaliate against and undermine Plaintiff the multiple nurses and various hospital staff would go over Plaintiff's head and ask Plaintiff's attending physicians directly whether or not it was necessary to complete the orders Plaintiff gave them.

37. Mere weeks later, Plaintiff met with Dr. Cannady, Dr. Shayuk and Ted Lorence, Graduate Medical Education Director. Plaintiff again expressed her concerns regarding the harassment and hostile work environment and explained the extreme distress it was causing her. Defendant did nothing and had no response.

38. Soon after, Defendant terminated Plaintiff from her residency program putting her fifteen years of hard work to achieve her goals in serious jeopardy.

39. Plaintiff has been damaged by Defendant's illegal conduct.

40. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

**Count I: Sexual Harassment in Violation of Title VII**

41. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

42. Defendant's sexually harassing actions were so frequent and severe that it created a hostile work environment.

43. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII Plaintiff has suffered and continues to suffer, lost wages, lost

benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

44. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

**Count II: Sex Based Discrimination in Violation of Title VII**

45. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

46. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her sex, female.

47. Defendant is prohibited under Title VII from discriminating against Plaintiff because of her sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

48. Defendant violated Title VII by terminating and discriminating against Plaintiff based on her sex.

49. Defendant intentionally discriminated against Plaintiff on the basis of her sex.

50. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

51. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count III: Retaliation in Violation of Title VII

52. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

53. Plaintiff engaged in protected activity under Title VII on more than one occasion while employed by Defendant.

54. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

55. Defendant's conduct violated Title VII.

56. Defendant's discriminatory conduct, in violation of Title VII has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

57. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

58. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count IV: Sexual Harassment in Violation of the IHRA

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

60. Defendant's sexually harassing actions were so frequent and severe that it created a hostile work environment.

61. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the IHRA Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

62. Defendant's unlawful conduct in violation of the IHRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

## Count V: Sex Based Discrimination in Violation of the IHRA

63. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

64. At all times relevant to this action, Plaintiff was in a protected category under the IHRA because of Plaintiff's sex.

65. Defendant is prohibited under the IHRA from discriminating against Plaintiff because of Plaintiff's sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

66. Defendant violated the IHRA by unlawfully terminating and discriminating against Plaintiff based on her sex.

67. Defendant intentionally discriminated against Plaintiff on the basis of her sex.

68. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the IHRA Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

69. Defendant's unlawful conduct in violation of the IHRA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

## Count VI: Retaliation in Violation of the IHRA

70. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

71. Plaintiff engaged in protected activity under the IHRA while employed by Defendant.

72. At all times relevant to this action, Plaintiff was in a protected category under the IHRA because of her sex.

73. Defendant's conduct violates the IHRA.

74. Defendant's discriminatory conduct, in violation of the IHRA has caused the Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

75. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

76. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's statutorily protected rights, thereby entitling her to punitive damages.

### Count VII: Intentional Infliction of Emotional Distress

77. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

78. Defendant engaged in deliberate conduct when it repeatedly failed to take remedial action following Plaintiff's complaints and its own first-hand knowledge of the discriminatory and harassing behavior Plaintiff endured, thus ratifying the discrimination and harassment.

79. Defendant's conduct was extreme and outrageous.

80. Defendant's extreme and outrageous conduct caused Plaintiff to suffer severe emotional distress.

### Count VIII: Intrusion Upon Seclusion

81. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-40 above.

82. Defendant engaged in an unauthorized intrusion or prying into Plaintiff's seclusion.

83. Defendant's intrusion was highly offensive or objectionable to a reasonable person.

84. The subject matter of Defendant's intrusion was private.

85. Defendant's intrusion caused Plaintiff great anguish and suffering.

### Count IX: Public Disclosure of Private Facts

86. Defendant's actions gave publicity to the disclosure of Plaintiff's private facts.

87. The facts Defendant disclosed publicly about Plaintiff were private, and not public, facts.

88. The private facts Defendant disclosed publicly about Plaintiff were considered highly offensive to a reasonable person.

11

89. The private facts Defendant disclosed publicly about Plaintiff were not of legitimate public concern.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:
*/s/ Gabrielle Klepper*
Gabrielle Klepper (92815)
Gary Martoccio (6313431)
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gabrielle.klepper@spielbergerlawgroup.com
gary.martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*